UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON ALLEN OLRICH,

                Plaintiff,

v.                                         Case No. 18-cv-1518-pp

MITCHELL ILLICHMANN, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE MOTIONS TO APPOINT COUNSEL (DKT. NOS. 10, 11), DENYING AS MOOT MOTION TO FILE AMENDED COMPLAINT (DKT. NO. 15) AND SCREENING AMENDED COMPLAINT (DKT. NO. 16)**

The plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Before the court screened his original complaint, the plaintiff filed three motions to appoint counsel, dkt. nos. 7, 10 and 11; a motion to amend the complaint and stay screening until he could do so, dkt. no. 15; and an amended complaint, dkt. no. 16. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motions to appoint counsel, dkt. nos. 10 and 11, his motion for leave to file amended complaint and to stay, dkt. no. 15, and screens his amended complaint.

**I.   Motion for Leave to Proceed without Prepaying Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit

1

without prepaying the civil case filing fee if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 1, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $7.37. Dkt. No. 5. The court received that fee on October 15, 2018. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee and require him pay the $342.63 balance of the filing fee as he is able.

**II. Screening the Amended Complaint (Dkt. No. 16)**

    A.    <u>Federal Screening Standard</u>

Although the plaintiff has demonstrated that he does not have the money to pay the filing fee, the court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaint must be dismissed under these standards.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   The Plaintiff's Allegations

In the amended complaint, the plaintiff has named eleven defendants, all but one of whom are employed at the Mendota Mental Health Institute in Madison. Dkt. No. 16 at 2-3. He has sued Mitchell Illichmann, Ana Garcia, Andrea Den Otter, Sandra Hopkins, Stephanie Dunn, Julie Hall, Ronjo Foradakovic, Marlene Forbush or Forbuck, Jean Houghwout and John Doe Administrator #1. Id. He also has sued Mendota Mental Health Institute itself, based on what he alleges is a policy or practice. Id. at 3.

The plaintiff alleges that he was admitted to the Medium Assessment and Treatment Unit at Mendota Mental Health Institute on January 12, 2016. Id. at 3. The same day, he met with defendant Jean Haughwout, who noted in a report that he had a history of drug use (specifically cocaine, heroin,

3

methamphetamine, ecstasy, PCP, LSD, or inhalants); that he had come to Wisconsin at fifteen with his mother and stepfather; and that he had a criminal history "as listed above." Id. at 4.

The plaintiff met with defendant Ana Garcia the following day to review his charges, the reasons for his admission, and competency-related issues. Id. at 3. Garcia's report contained the following information: that the plaintiff's family relocated to Wisconsin when he was fifteen; that he had no recent use of marijuana or cocaine, though use in the past; that he had no other illicit drug or prescription drug use; and that he had criminal charges, including manufacture/deliver cocaine (two counts), felon in possession of a firearm (two counts), possession of cocaine with intent to distribute, possession of marijuana with intent to distribute and revocation in a burglary case. Id. at 3–4.

After a period of evaluation at Mendota, "the defendants" formulated a treatment plan. Id. at 4. The plaintiff alleges that this "form" contained information that was false and that he'd never provided, including:

- The plaintiff moved to Wisconsin at fifteen after stepfather died;
- Stepfather physically abused him;
- Sexually abused by babysitter;
- Admitted to Mendota Mental Health Institute January 7, 2016 from Fond du Lac County for competency evaluation;
- "Index" offenses include disorderly conduct, domestic abuse, failure to update information as a sex offender;
- First mental health hospitalization;
- History of alcohol abuse;
- That prior to incarceration he smoked marijuana and hashish every other day at times;
- He experimented with mushrooms, heroin and crack cocaine;
- Attended special education classes in school;

4

- Medical history: seizure disorder but states he does not know when he last seizure was; and
- Has poor dentations (multiple discolored, decayed, and missing teeth

Id.

The plaintiff says that during the review hearing or "staffing process," the plaintiff informed "the defendants listed herein" that much of the information on the form was incorrect. Id. He says that Garcia responded that the form was "true and correct." Id. at 5. The plaintiff alleges that none of the "other defendants who were present" did anything to clarify what the plaintiff said and just went along with Garcia. Id. The plaintiff says that the incorrect information just stayed in that report. Id. The plaintiff alleges that the inconsistences exceed even the list he provided and include three different dates of admission, an allegation that he did not practice his religion (when he does) and an allegation that he planned to "accomplish 'nothing' while hospitalized." Id.

The plaintiff insists that his only convictions are from Kenosha and Walworth Counties; he says he's never been charged with or convicted of an offense in Fond du Lac County, and that he's never been on a sex offender registry. Id. The plaintiff says that he's never used the drugs listed in the report, never attended special education classes, actually attended college and has told the defendants several times of his goals and plans for his time at Mendota. Id.

The plaintiff asserts that he has continuously written to the defendants asking that his records be corrected and telling them that "they were

5

continuing in a process that was harmful to him." Id. The plaintiff says that nothing has been done; "the only response he receives is a copy of some reports and one paragraph/sentence letter that does not address these concerns." Id. The plaintiff states that "[i]t is obvious that [the] defendants included information about another patient who was at MMHI during the same time [the plaintiff] was there . . . ." Id. at 5–6. He alleges that the defendants "still practice such policy now, in a manner that is a conspiracy to either keep the violation to [the plaintiff's] and others' rights [secret]." Id. at 6. The plaintiff says that these reports were sent to the district attorney and the circuit court judge, which had an "overall impact on the outcome of [the plaintiff's] case such as sentencing." Id. He says, however, that the crux of his complaint is "the defendants refus[al] to correct a wrong committed by them." Id. He alleges that if someone else's "protected health care information was carelessly placed in [the plaintiff's] records, [the plaintiff's] are most likely placed in someone else's too." Id.

The plaintiff asks for compensatory and punitive damages and an injunction requiring the defendants to correct his records and create a review system to prevent such errors in the future. Id. He also asks that if the court feels that he should have filed the case in the Western District (where Madison is located), the court should transfer venue to Madison, not dismiss the complaint. Id.

6

C.   The Court's Analysis

As it stands, the complaint does not state a claim for which this court can grant relief.

The plaintiff refers in the body of the complaint to only two of the individual defendants—Haughwout and Garcia. Throughout the complaint, he repeatedly refers to "the defendants," as if all eleven of them were responsible for the allegedly inaccurate report. Yet he does not say what any of the other defendants did. Did the other eight people about the alleged inaccuracies? When? What did he ask them to do about the inaccuracies? What was their response? Liability in §1983 cases is predicated on a defendants' personal involvement in a constitutional deprivation. Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009). The plaintiff has not alleged personal involvement on the part of each of the ten individual defendants.

It is not even clear to the court whether the plaintiff believes that Garcia or Houghwout made incorrect or false statements in their notes. He says that he never used drugs, so perhaps he alleges that Garcia and Houghwart were inaccurate when they said he did. It's not clear whether the plaintiff disputes the fact that he came to Wisconsin when he was fifteen with his mother and stepfather. It's not clear if the convictions listed by Garcia are his convictions from Kenosha and Walworth Counties—the ones he agrees are accurate.

Even if the plaintiff had made specific allegations against each individual defendant, it appears that the allegations would have related to the fact that "the defendants included information about another patient" on his treatment

7

plan form. Dkt. No. 16 at 5. At most, this states a claim for negligence. "Deliberate indifference is intentional or reckless conduct, not mere negligence." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (citing Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010)). "[S]howing mere negligence is not enough." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Estelle, 429 U.S. at 106).

Nor does the plaintiff explain how the defendants' errors harmed him. The plaintiff says that the defendants' failure to correct the errors alleged resulted in the "continuing of a process that was harmful to him." Dkt. No. 16 at 5. But he doesn't explain how the process was harmful to him. He says that the inaccurate report went to the district attorney and the circuit court judge, but he also says that that isn't the crux of his complaint. Id. at 6. Even if the plaintiff describes deliberate actions by specific individuals, he can't state a claim if he can't show how those individuals harmed him by their actions or inaction.

Nor has the plaintiff stated a claim against Mendota Mental Health Institute. Section 1983 allows a plaintiff to sue any "person" who violates his constitutional rights while acting under color of state law. The Mendota Mental Health Institute is not a "person," and it is not free-standing legal entity; it is an arm of the state of Wisconsin. Wis. Stat. §46.03(1). The plaintiff cannot sue the state of Wisconsin, however, because the state is not a person under §1983, "and because a suit against a state for money damages is barred by the Eleventh Amendment." Smith v. United States, 298 F. App'x 510, 511 (7th Cir.

2008) (citations omitted). The court will dismiss Mendota Mental Health Institute as a defendant, and the plaintiff must not name it in his amended complaint.

In other circumstances, the court would dismiss the complaint and assess the plaintiff a strike for filing a complaint that does not state a claim. The court, however, has reviewed the plaintiff's original complaint. Dkt. No. 1. While it, too, suffered defects, it appears that somewhere in the seventeen pages of allegations in that original complaint, the plaintiff may have stated that a particular defendant or defendants knowingly or recklessly took action which caused him harm. The court will give the plaintiff a final opportunity and allow him to file a second amended complaint that states a claim.

When writing his second amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights? 2) What did each person do to violate his rights? 3) Where did each person violate his rights? and 4) When did each person violate his rights? The plaintiff's second amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its complaint form and instructions. The plaintiff must write the words "Second Amended" at the top of the first page of the form, in front of the word "Complaint." He must list the case number for this case—18-cv-1518—on the first page. He must list all the defendants he

wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The second amended complaint takes the place of the prior complaints and must be complete in itself; the plaintiff may not refer the court back to his previous complaints, he must repeat in the second amended complaint any of the facts from the original complaint that are necessary to his claims. If the plaintiff files the second amended complaint by the deadline the court sets below, the court will screen it under 28 U.S.C. §1915A.

### III. Amended Motion to Appoint Counsel (Dkt. No. 10) and Motion to Appoint Counsel (Dkt. No. 11)

The plaintiff has filed three motions to appoint counsel. Dkt. No. 7, 10, and 11. His first motion was unsigned, dkt. no. 7, and the court would have denied it for that reason because Federal Rule of Civil Procedure 11(a) requires that all pleadings be signed. Before the court could do so, however, the plaintiff filed an amended motion (this one was signed). Dkt. No. 10. A few days later, the court received from the plaintiff another motion (with eight pages attached showing the efforts he'd made to find a lawyer on his own), dkt. no. 11, followed by a supplement a month or so after that, dkt. no. 12.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir.

2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence

11

gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has supplied twelve letters from attorneys and organizations declining to represent him. Dkt. Nos. 11-1, 12, and 13. The court is satisfied that the plaintiff has made a good faith effort to find counsel on his own. The remaining question is whether the plaintiff is competent to litigate his case himself.

In his amended motion, the plaintiff explains that he can't afford a lawyer, that the case is complex and that he suffers from diagnosed mental illness (which he describes in detail). Dkt. No. 10. The plaintiff notes that he struggles with time management, organization, memorization and the ability to concentrate. Id. He also references his need for more time and special help to take tests, do his homework and understand words. Id. He says that he has hallucinations and is on and off suicide watch. Id. He notes that he has only limited knowledge of the law, and that he has very limited access to the law library. Id. at 2. In his April 9 motion, the plaintiff asked the court to take into consideration the fact that he doesn't have the mental capacity to represent

himself, and that he has been writing lawyers for almost three years without success. Dkt. No. 11. In the supplement, the plaintiff says that in school and college, teachers had to send him to a special room and give him extra time to take tests and do homework. Dkt. No. 12 at 1. He says they would have to explain words to him, and that his learning disorder required him to have special tutors. Id. He says that he "does not understand what is going on." Id.

Some of the issues the plaintiff identifies in his amended motion are issues that most incarcerated plaintiffs struggle with—the inability to hire a lawyer, lack of knowledge of the law, limited time in the law library. The plaintiff's situation is complicated, however, by what appears to be severe mental illness. It certainly sounds as though his illness makes it hard for him to concentrate and focus, and perhaps to remember and meet deadlines. It isn't clear, but he may also have difficult accessing his legal documents, or the law library, if he is on suicide lock-down. The court takes these concerns seriously.

At this early stage, however, the plaintiff has managed to file (apparently with the help of another inmate) both a complaint and an amended complaint, as well as a motion for class certification and an original and amended motion to appoint counsel. The court has been able to understand his allegations; he writes clearly and understandably. Right now, the only thing the plaintiff needs to do is to file an amended complaint that complies with the instructions the court has provided in this order. He doesn't need to go to the law library or have an understanding of the law. He just needs to explain to the court who violated his rights, what they did to violate them, and where and when these

violations occurred. The court believes, having read his pleadings so far, that the plaintiff can provide the court with this information. Given the plaintiff's issues, the court will give him extra time to file the amended complaint—thirty days, more than it gives other prisoners. If he needs more time, the plaintiff should file a motion asking for it, but he should make sure he files that motion in time for the court to receive it *before* the deadline for filing the amended complaint.

If, as the case moves along, the plaintiff finds himself unable to accomplish the tasks the court sets, he may renew his motion to appoint counsel.

## IV. Motion to File Amended Complaint (Dkt. No. 15)

About three weeks before he filed his amended complaint, the plaintiff filed a motion asking for leave to amend the complaint. Dkt. No. 15. The plaintiff filed a motion titled "Motion to File Amended Complaint." Id. at 1. The caption of the motion listed three case numbers—this one, Case No. 18-cv-1980 and Case No. 18-cv-1985. Id. The motion cited Fed. R. Civ. P. 15(a)(2), which requires a party to obtain leave of court to amend the complaint if more than twenty-one days have passed since the filing of the original complaint. Id. The motion also asked the court to delay screening all three cases until after the plaintiff had filed amended complaints, which he said he'd be doing in the next three weeks. Id. He told the court that he needed to amend the complaints because they were "facially bald" and didn't show how his rights were violated and listed defendants who weren't involved in violating his rights; he claims

14

this is because he got "faulty advice and assistance" from another inmate. Id. at 1-2.

The motion also asked the court to consolidate Case No. 18-cv-1980 with Case No. 18-cv-1985, and to allow him to file a single amended complaint for both. Id. at 2. He explained that "the issues can and should be brought in one action as some of the defendant(s) will be the same in both case(s)." Id.

The plaintiff will grant the plaintiff's motion to the extent that he was asking leave to file the amended complaint that the court has now screened. The court will deny as moot the request to delay screening. It has ruled on the plaintiff's motion to consolidate in orders it issued in Case Nos. 18-cv-1980 and 18-cv-1985.

**V.    Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motions to appoint counsel. Dkt. Nos. 10, 11.

The court **GRANTS** that portion of the plaintiff's motion to file amended complaint that sought leave to file the amended complaint the court received on September 9, 2019. Dkt. No. 15.

The court **DENIES AS MOOT** that portion of the plaintiff's motion to file amended complaint that asked the court to delay screening until he could file the amended complaint. Dkt. No. 15.

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 16.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **April 10, 2020**. If the court does not receive the amended complaint by the deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 11th day of March, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**